## MORRISON LACKLAND, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, April 28, 1903.

1. **Carrier: SHIPMENT OF HOGS DELIVERED AT STOCK PENS: OVERHEATED AND DIED IN PENS: CONTRIBUTORY NEGLIGENCE.** It being the duty of the defendant railroad company to prepare a safe place for live stock received by it for shipment over its road, any loss occasioned on account of having an unsafe place for such stock in which it was put by direction of the company, would fall on it, nor would contributory negligence be attributable to plaintiff for using the stock pens as directed.

2. ———: **UNSAFE STOCK PENS AND SUMMER HEAT, QUESTION FOR THE JURY.** Very hot summer weather in June in the latitude of Audrain county might be expected, and whether fat hogs could be safely kept awaiting shipment in pens under conditions shown in the evidence was at most a question for the jury.

3. ———: **STOCK PENS OBVIOUSLY UNSAFE: CONTRIBUTORY NEGLIGENCE.** A shipper of live stock is not guilty of contributory negligence in putting them in the pens furnished by the carrier therefor, till they are loaded for transportation, unless they

are so obviously unsafe as to make it reasonably certain that **injury to the animals** must inevitably result.

4. ———: DELIVERY OF STOCK FOR SHIPMENT, WHEN: NOTICE. Delivery of live stock to a carrier is complete, so that its liability as such attaches, where the shipper applies to the carrier's freight agent for transportation, and, at his direction, places the animals in the usual place for receiving them for shipment; the agent being then notified thereof, and taking directions for their shipment.

5. ———: ———: FAILURE TO INSTRUCT, NOT ERROR: PARTY MUST REQUEST INSTRUCTION. One not having framed and requested an instruction as to what constitutes delivery of freight to a carrier, can not complain that the court merely left it to the jury to determine whether the facts in evidence established delivery.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

### STATEMENT.

The contested cause of action in plaintiff's petition upon which a trial before a jury resulted in a verdict for respondent, abridged, was as follows: That it was the duty of the defendant, as a common carrier of live stock, to provide and maintain safe and suitable pens at shipping points along its railway, in which to receive and safely keep live stock tendered for shipment; that on June 9, 1902, plaintiff arranged with defendant's agent to ship eighty-two fat hogs on June 10, 1902, from Mexico, Missouri, to National Stock Yards, Illinois, and on June 10, 1902, plaintiff put said hogs in the pens for shipment on the first train of defendant which could take them to their destination, and notified defendant's agent, who received said hogs into its pens and custody and accepted them for shipment; that when said hogs were put in said pens they were sound and healthy and in good condition for shipment, but that plaintiff had so unskillfully, carelessly and negligently constructed and

maintained its stock pens as to render them dangerous and unsafe for the reception and keeping of fat hogs in warm weather, in this, that said pens were divided by three partition fences running north and south across said pens and along the south side of said pens, close to the fence on the south side, defendant negligently had thrown up a high embankment of dirt and negligently and wrongfully had allowed a large amount of iron, timber, etc., to accumulate thereon, and carelessly allowed grass and weeds to grow in rank profusion and to a great height thereon so that said embankment, debris, grass and weeds entirely cut off the air and breeze from reaching and blowing upon live stock placed in said pens; and defendant, in violation of its duty as a common carrier, negligently failed to provide any sheds, shade, shelter or other protection in said pens, and negligently failed to provide or supply said pens with water for the use of live stock placed in said pens for shipment in hot weather.

The petition further alleged that the hogs were placed in said pens about 7 a. m., June 10, 1902, and were received and accepted for carriage, but defendant negligently failed to furnish plaintiff a train in which to ship them until 7 p. m. of the same day which was hot, but no warmer than usual there in the summer months; that thereby the hogs, after being placed in said pens and received and accepted for shipment in good condition, became overheated and sick and twenty-four of them thus overheated died, and the remainder were depreciated in value.

A motion to strike out parts of this complaint, charging that such portions stated conclusions of law, and that there was no law requiring defendant to provide stock pens with shelter, water or other protection from the weather for live stock while waiting shipment in such pens, and a demurrer assigning that the facts stated constituted no cause of action, were alike overruled, and defendant joined issues by an answer con-

taining a general denial, and a plea of contributory neg-
ligence in the particulars that plaintiff was familiar
with the pens and knew they contained no shade or
water; that he put the hogs in the pens about 7 o'clock
a. m., to await shipment at 6:30 p. m., when the weather
was intensely hot, well knowing that they would not be
loaded or forwarded before 6:30 p. m., of that day, and
not intending or expecting to load them before 6 p. m.,
and after placing them in the pens he went off and left
them without care and attention.

The facts developed at the trial were that about the
first of June, 1902, the respondent, Morrison Lackland,
had eighty-two fat hogs ready for shipment to market
on his farm two and one-half miles from appellant's
stock pens in Mexico. Desiring to ship said hogs to
the National Stock Yards, East St. Louis, he called upon
Guy Waite, freight agent of appellant at Mexico, whose
business it was to make arrangements with shippers
for the transportation of live stock, and in charge of ap-
pellant's stock pens at Mexico, and who had the key to
the pens on the day before the hogs were shipped, for
the purpose of obtaining a car. Finding he could get
a car the next day, he told Waite he would return home,
select a car load of hogs, and have them ready to bring
in early in the morning while it was cool. Waite told
him to bring them in and put them in the pens of appel-
lant used by persons shipping over its line. Respon-
dent himself lived at Mexico, and told Waite he would
go out for the hogs very early the next morning, and
Waite gave him the key to the gate of the stock pen, and
directed him to place the hogs in the pens when he
brought them, lock the gate and return the key to him.

On June 10th, about 4:30 o'clock in the morning,
respondent started his hogs from his farm to Mexico;
the morning was cool and the hogs were delivered to
defendant in its stock pens in first-class condition, sound
and healthy, at 7:30 o'clock a. m. Respondent then
locked the gate, as instructed by Waite, returned the

key and told him that he had delivered the hogs to him in the pens, and Waite said all right. He then directed Waite to consign the hogs to Moody Commission Company, and Waite made a minute of the number and the consignee, and replied to respondent it would be attended to.

The stock pens of appellant were built on ground sloping southwardly, and on the south side of the fence and very close thereto, there was a pile four or five feet high of old timbers and iron over which weeds and grass had grown, making a wall which shut off the breeze and air from the south, and the pens were not provided with either shade, shelter or water. As the day advanced it became warmer, the hogs became overheated and twenty-four head died in the pens before shipment, the remainder being saved by being watered by men employed for the purpose by respondent who was notified about midday of their exposed and heated condition.

*F. Houston* and *Chas. C. Madison* for appellant.

(1) Unless such actual delivery had been made to defendant as made it thereafter incumbent on it to look after, care for, and feed and water the hogs, there can be no recovery in this case. The petition does not state any such case. The facts do not prove it. The law imposes no such obligation. There was no agreement, express or implied, to care for the hogs while waiting to be loaded. It was not the custom to do so. The placing of the hogs in the pens so long before the time for loading was unusual. The plaintiff lived near, was a frequent shipper, and knew every circumstance and condition under which he acted. There was no delivery. (2) The liability of a carrier of live stock does not attach until there has been a change of possession from the owner to the shipper. Then it attaches, and not till then. If the shipper retains a partial control,

the liability, if any, is not that of a common carrier, but is limited as its control and custody is limited. 5 Am. and Eng. Ency. Law, 181-2, and 461. (3) Nothing is better settled than that a plaintiff can not recover for avoidable consequences. The facts have been sufficiently set out in appellant's statement and first point, as condensed from plaintiff's own testimony. See 1 Sedg. Dam. (8 Ed.), 295, secs. 201-205, citing many cases and quoting Scott v. Boston, etc., Co., 106 Mass. 468, where it was tersely stated that "he can not be permitted to recover of the defendant for losses which, by reasonable effort, he might have avoided." This principle is fully established in Alliance Trust Co. v. Stewart, 115 Mo. 236, and in Coal Co. v. Brick Co., 66 Mo. App. 296, and is nowhere disputed.

*R. D. Rogers* for respondent.

(1) The appellant was in duty bound to keep its stock pens at Mexico in a reasonably safe and secure condition for the purposes intended. If it failed to do so and respondent was thereby damaged in the manner alleged in his petition, the appellant is liable. Cooke v. Railroad, 57 Mo. App. 471; Kincaid v. Railroad, 62 Mo. App. 365; Mason v. Railroad, 25 Mo. App. 476; Covington Stock Yards Co. v. Keith, 139 U. S. 128. (2) The following authorities show that there was a delivery: Tracy v. Railroad, 80 Mo. App. 391; Mason v. Railroad, 25 Mo. App. 476; Pruitt v. Railroad, 62 Mo. 539; Covington Stock Yards Co. v. Keith, 139 U. S. 128. (3) This being a civil case, if the defendant desired a definition of the expressions, "safe and secure," and "delivery," it should have asked an instruction to that effect. This it failed to do and can not complain. Quirk v. St. L. United Elevator Company, 126 Mo. 293; Johnson v. Railroad, 96 Mo. 340. (4) Instructions which are good as far as they go, but do not cover the whole case, amount, in civil cases, only to non-direction and

not to error.   Doyle v. Railroad, 113 Mo. 280; 2 Ency. of Pl. and Pr., pp. 217 to 227, and notes.

REYBURN, J.—The principal contentions on behalf of appellant are, that the legal duty resting upon defendant extended no farther than to provide pens or yards for the purpose of holding the stock, and preventing escape pending shipment preparatory to loading for transportation, and that it was under no obligation to furnish shade and shelter or otherwise protect or care for the stock while in the yards awaiting shipment.   It was as much the duty of the defendant to establish and maintain a safe receptacle for the receipt and preservation of live stock awaiting shipment on defendant's railroad, as it was to construct and maintain a secure depot for inanimate freight, and to provide and furnish safe cars for the transportation of both.

A railroad does not transport live stock with the same measure of responsibility which attends the carriage of goods, but there are well recognized limitations of its liability arising from the nature of animate freight.   The difference in liability grows out of the inherent dangers from the nature of such subject of carriage.   Common carriers are insurers of inanimate freight against all loss or damage, except such as are unavoidable or caused by public enemies, but there is no warranty on the carrier for injuries to living freight consequent upon its own vitality, and such carrier is exonerated from liability for injuries to the latter, if he can establish that he has provided all suitable means of transportation and exercised that degree of care which the nature of the property required.   Hutchinson, Carriers (2 Ed.), sec. 217.

A railroad corporation, holding itself out to the public as a carrier of live stock, from the character of such business must provide and maintain suitable facilities for receiving live stock offered for shipment over its road.   "When animals are offered to a carrier of

live stock to be transported, it is its duty to receive them; and that duty can not be efficiently discharged, at least in a town or city, without the aid of yards in which the stock offered for shipment can be received and handled with safety." Covington, etc., v. Keith, 139 U. S. 128; also, Cooke v. Railroad, 57 Mo. 471; Mason v. Railroad, 25 Mo. App. 473; Kincaid v. Railroad, 62 Mo. App. 365; Hutchinson, Carriers, 322, 322a, 322b.

A high range of temperature, especially during midday, at the season of the year in question, in the latitude of Audrain county, could not be accounted extraordinary, or not to be looked for, and whether such character of live stock could be safely kept awaiting shipment during the month of June in pens under the conditions shown by the evidence, was at most a question for the jury. Pruitt v. Railroad, 62 Mo. 527.

2. Appellant further urges that plaintiff was chargeable with the consequences of the facts known to him of the weather conditions obtaining and the absence of shade, shelter and water in the pens. When a railroad has invited and obtained the shipper's business by holding itself out as a common carrier of live stock, it is presumed to have safe means of handling the stock it has accepted and engaged to transport, and it can not be heard to say that in adopting the means offered the shipper was negligent. As has been frequently said, the shipper and the carrier are not on even terms, the former not being in a situation to refuse to ship, and unless the mediums of shipment employed are so obviously dangerous as to make it reasonably certain that injury must inevitably result, the shipper should not be held guilty of contributory negligence in accepting the means tendered. Kincaid v. Railroad, 62 Mo. App. 365; Paddock v. Railroad, 60 Mo. App. 328; Mason v. Railroad, 25 Mo. App. 475.

3. Appellant further objected that its liability had not attached, as there had been no delivery of the property. The receipt of the stock in the pens of defendant

imposed an obligation upon it to forward them, and being placed at the usual place of receiving such freight for shipment as directed by the representative of defendant under the circumstances herein detailed, the delivery was complete and the liability of defendant as a carrier attached therefrom. Hutchinson, Carriers (2 Ed.), sec. 89; Mason v. Railroad, supra.

4.    Complaint is also made that the court did not instruct the jury as to what constituted delivery but left it to the jury to determine whether the facts detailed in evidence established delivery. As has been frequently decided in the trial of a civil action, the court is not required to instruct the jury except as requested by the parties, and the defendant, if it desired the jury so enlightened, should have framed and requested an instruction appropriately defining the legal import and requirements of delivery. Construction Co. v. Railroad, 71 Mo. App. 626; Hall v. Jennings, 87 Mo. App. 635. ''If parties wish instructions on any particular question, they should ask the court to give them." Coleman v. Drane, 116 Mo. 387, and cases cited.

5.    Error is imputed in the form of the second instruction on plaintiff's behalf, in that it required the jury to find for plaintiff, if the stock became overheated and died by reason of the pens not being reasonably safe, *as stated in plaintiff's petition,* but this position is untenable and the objection without merit. The rule is well established that the jury should not be referred to the pleadings in a civil action, nor to the indictment in a criminal proceeding to ascertain the issues upon which they are to pass. State v. Scott, 109 Mo. 226; State v. David, 131 Mo. 380; Sherwood v. Railroad, 132 Mo. 339; Britton v. St. Louis, 120 Mo. 437; Hartpence v. Rogers, 143 Mo. l. c. 633. But the other instructions given fully define the issues presented to the jury, and the words criticised by defendant could have been entirely omitted without impairing the instruction. It is impossible to conceive how the jury could have been

misled or the rights of the defendant prejudiced by the use of the words complained of.

It is insisted, finally, that it was the duty of plaintiff to have avoided the injury, if possible by reasonable effort, which could have been accomplished at a small outlay by appellant's application in the first instance of the means of relief effectually resorted to in saving the larger number of the animals when their dangerous condition was reported to respondent. The rule of avoidable consequences is a rule of limitation of the plaintiff's recovery, and does not arise until damages have been produced or are in course, which create or will create a cause of action. Sedgwick, Damages (8 Ed.), vol. 1, sec. 204. If respondent had not restricted the damages accruing by relieving the distress of the animals when apprised of the situation, this doctrine might not lack application, but under the undisputed facts herein presented the rule is not appropriate.

Discovering no reversible error in the record, the judgment will be affirmed. *Bland, P. J.,* and *Goode, J.,* concur.