CHARLES M. MOSS et al., Respondents, v. MIS-
SOURI, KANSAS & TEXAS RAILWAY CO., Ap-
pellant.

Kansas City Court of Appeals, February 13, 1911.

1. CARRIERS: Loading Stock: Time of Trains. Where a regular
stock train was taken off by the carrier and an extra substi-
tuted without any time schedule, it was proper diligence in
loading hogs for shipment by that train, to begin the loading
when the time of arrival of the train was announced to 'the
shipper by the carrier's agent.

2. ———: ———: ———: Part of Shipment. Where a carrier is
notified by a shipper that he intends to ship three carloads
of hogs to the market, and provides cars therefor, and the
carrier's agent in charge of its train negligently delays moving
the cars to the chute at the stock pens, and negligently takes
the train out with only one of the cars of stock, and the others
have to remain in the pens until next day, and by reason of
the heat and confinement shrink in weight, the carrier is liable
for the damage.

3. ———: ———: ———: Evidence. Under an allegation of
diligence by the shipper and of negligence against the carrier,
it was not error to allow evidence that it was neither proper
nor usual to begin to load stock until the time the train would
arrive was known; and that stock trains of defendant's road
never left the station with only a part of the shipment.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thur-
man,* Judge.

AFFIRMED.

*Lee W. Hagerman* for appellant.

*Lee B. Ewing* and *J. R. Moss* for respondent.

ELLISON, J.—Plaintiff's action is to recover of
defendant for its failure to transport two carloads of
hogs from the town of Walker, Missouri, to St. Louis,

whereby they shrunk in weight to his damage in the sum of $108.22. The judgment in the trial court was for the plaintiffs.

The evidence in plaintiffs' behalf tended to prove that they desired to ship, on June 7, 1909, three carloads of hogs over defendant's road to the market in St. Louis. That a day or two before that date they notified defendant's agent at Walker and in compliance with this request defendant set out three empty cars on a siding leading by its stock pens, and left one of the cars at the chute. Defendant's regular stock train was due at Walker at 10:30 o'clock in the morning, but on the morning of the 7th of June (perhaps before) it was taken off and a special train, without regular schedule, was put in its place. There was no way to know when this train would arrive except through the agent at Walker, and neither he nor plaintiffs was notified of its coming until between twenty and thirty minutes before its arrival. As soon as informed, plaintiffs began to load the car at the chute and could get but that car loaded before the arrival of the train. When the train got in, the conductor saw the situation and instead of moving the loaded car out and putting an empty one at the chute, he went to the station house for orders, the engine remaining idle during this time. He returned and ordered the loaded car to be taken out and an empty put in its place for loading. This was done, and plaintiffs got the second car loaded before the train left; but instead of putting this car in its train, with the first, the train left without taking it, or waiting for the third to be loaded. It was further shown that, in consequence of this, it became necessary for plaintiffs to unload the loaded car into the pens, with the hogs intended for the third car, where the two loads were kept in the heat until the next day; the shrinkage complained of resulting. There was evidence in defendant's behalf in many respects differing from that of plaintiffs', but

as the verdict was for the latter we accept as the facts in the case what their evidence tends to prove.

In showing the stock to be partly loaded in the car and the remainder in defendant's stock pens, there was undoubtedly a delivery to defendant for shipment. [Lackland v. Ry. Co., 101 Mo. App. 420; Mason v. Ry. Co., 25 Mo. App. 473.] "Where cattle have been placed in company's pens for immediate shipment, and part of them have actually been loaded on the cars, the cattle are in the custody of the company as a carrier, and not as a warehouseman." [4 Elliott on Railroads, 2183.]

In accepting the evidence in plaintiff's behalf we are led to an affirmance of the judgment. The instructions presented the issue whether plaintiffs began to load the hogs as soon as told of the time the train was expected. Defendant asked but one and that was given. It informed the jury that if plaintiffs had been notified when the train would arrive, in time to have the cars loaded, and did not get them loaded, defendant was under no duty or obligation to wait for the loading thus neglected.

Some objection is made to the sufficiency of plaintiffs' petition on the ground that it does not state a cause of action. This is said to be for the reason that it states wantonness and negligence and that these are contradictory. We have examined the pleading in this respect and have no doubt that it sufficiently states a cause of action for negligence.

Nor do we regard the objection to witnesses stating that when a part of a shipment was loaded and other parts in process of loading, the defendant company had never before taken the train out without getting the whole shipment. It was objected to on the ground that a custom was not pleaded. We think it was not the purpose to establish a custom as that word may be technically understood, but rather as a persuasive mode of establishing the act in this instance, as negligent. We

think the evidence, in the circumstances, was within the issue. All of the evidence in this branch of the case, including that of the time when plaintiff's began to load, was a proper way to show diligence on plaintiff's part and negligence on the part of defendant.

We are satisfied from the entire record that no substantial error was committed and that the judgment was for the right party. It is accordingly affirmed. All concur.