# JAMES LEE READING, Respondent, v. CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, April 2, 1912.

1. **COMMON CARRIERS: Maintenance of Stock Pens: Duty of Carrier.** A railroad company, as a common carrier of live stock, must maintain yards or stock pens in a reasonably safe condition for the reception of stock for shipment over its road.

2. ——————: ——————: **Negligence: Liability of Carrier.** Where a shipper is invited by a common carrier to corral live stock in a stock pen maintained by it, to await the arrival of a car, the carrier is liable to the shipper for such damages as result to the stock from negligence in the construction or maintenance of the pen.

3. ——————: **Carriage of Live Stock: Delivery to Carrier: Sufficiency of Evidence.** In an action for the death of hogs from overheating while in the stock pen of the defendant railway company prior to being loaded onto a car, evidence *held* to sustain a finding that the delivery in the pen amounted to a delivery to the company, although the shipper would have been required to load the hogs on the car when it arrived.

4. ——————: ——————: **Negligence: Contributory Negligence.** Though it may have been careless for a shipper to corral eighty-two fat hogs in a dry pen on a hot day in June, without looking closely to the ventilation, yet, unless the situation was so obviously dangerous that a reasonably prudent man would not have placed them in the pen for the time being, the question of whether he was guilty of contributory negligence was for the jury.

5. ——————: ——————: ——————: **Instructions: Broadening Issues.** Where, in an action against a carrier of live stock for the death of hogs by overheating in a stock pen while awaiting shipment, the negligence charged was, that the stock pen was too small, that the defendant had allowed weeds and grass to grow and railroad ties to be stacked around and adjacent to the pen, so that no breeze blew on the hogs therein, and that the defendant had provided no shelter or water therein, an instruction authorizing a verdict for plaintiff, if the jury found the death of the hogs "was caused by the negligence, if any, of the defendant in failing to provide a reasonably safe place to re-

ceive and care for said hogs after being received by it and awaiting shipment over its line," was improper as broadening the issues, in that it failed to submit the precise acts of negligence counted on.

6. **NEGLIGENCE: Instructions: Should not Broaden Issues.** In a negligence action, where the petition charges specific acts of negligence, the instructions authorizing a recovery should submit to the jury such acts of negligence only as are counted on in the petition and supported by the evidence.

Appeal from Louisiana Court of Common Pleas.— *Hon. D. H. Eby,* Judge.

REVERSED AND REMANDED.

*Palmer Trimble* and *John W. Matson* for appellant.

(1) The trial court should have given appellant's instruction in the nature of a demurrer to the evidence at the conclusion of the respondent's case in chief and certainly should have given that instruction at the conclusion of all of the evidence in this cause. Fickland & Son v. Railroad, 115 Mo. App. 633; Otrich v. Railroad, 154 Mo. App. 420; Meyers v. Railroad, 90 Mo. 98; Paddock v. Railroad, 155 Mo. 524; Huston Bros. v. Railroad, 63 Mo. App. 671; Milne v. Railroad, 155 Mo. App. 465; Warner v. Railroad, 137 S. W. 275; Cragin v. Railroad, 51 N.Y. 61; Insurance Co. v. Railroad, 144 N. Y. 200, 68 Hun 598; Blackstock v. Railroad, 20 N. Y. 48; Rixford v. Smith, 52 N. H. 55; Squire v. Railroad, 98 Mass. 239; Coupland v. Railroad, 61 Conn. 531; Railroad v. Van Dreser, 22 Wis. 511; Williams v. Railroad, 117 Ga. 830; C. R. Co. v. James, 117 Ga. 832; Railroad v. Word, 32 S. W. 14; Fordyce v. McFlynn, 19 S. W. 961; Railroad v. Riley, 1 S. W. 446; Frazer v. Railroad, 48 Ia. 571.    (2)   Respondent's petition is based upon special negligence therein alleged, and the instructions given on behalf of the respondent does not confine the negligence to the issues alleged in the petition.   Miller v. United Railways, 155 Mo. App. 528; Smith v. Railroad, 126 Mo. App. 120; Monroe v. United

Railways, 154 Mo. App. 39; Kohr v. Railroad, 117 Mo. App. 303; Politowitz v. Telephone Co., 115 Mo. App. 57; Lowenstein v. Railroad, 110 Mo. App. 686.

*Pearson & Pearson* for respondent.

(1) The law is well established in this State that it is the duty of a railroad company which holds itself out as a common carrier of live stock, and has invited and obtained a shipper's business, to establish and maintain a safe receptacle for the receipt and preservation of live stock awaiting shipment over its road; and this duty cannot be efficiently discharged without the aid of pens or yards in which the stock, offered for shipment, can be received and handled with safety awaiting shipment. Lackland v. Railroad, 101 Mo. App. 420; Mason v. Railroad, 25 Mo. App. 473. (2) As to whether or not the pen in the case at bar was a reasonably safe receptacle for the receipt and preservation of hogs awaiting shipment on appellant's railroad, was a question for the jury to determine under proper instructions. Lackland v. Railroad supra; Prewitt v. Railroad, 62 Mo. 527. (3) The main question, that appellant seems to endeavor to press on this court, is a question of fact, that there was no delivery to or acceptance of these hogs by appellant. This too, was a question of fact to be submitted to the jury under proper instructions. Lackland v. Railroad, supra; Holland v. Railroad, 139 Mo. App., 70; Mason v. Railroad 25 Mo. App. 473; Prewitt v. Railroad, 62 Mo. 527.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of defendant's negligence in maintaining its stock pen. Plaintiff recovered and defendant prosecutes the appeal.

It appears defendant maintains a stock pen for the accommodation of shippers at a siding or station on its railroad at Reading, about seven miles from Louis-

iana, Missouri. Plaintiff is a farmer and ships cattle and hogs over defendant's railroad from Reading station several times each year. Defendant maintains no office and has no agent at Reading but all shipments of stock from that point are negotiated through its freight agent at Louisiana, seven miles distant.

On June 29, plaintiff telephoned defendant's agent at Louisiana that he desired to ship a carload of hogs from Reading on the evening of the following day, and requested a car for that purpose. Defendant's agent assured him that the car would be furnished in due time, and on the following morning plaintiff, together with others, drove the hogs about three miles from his home to Reading station. As the weather was warm, the hogs, eighty-two in number, were removed from plaintiff's farm to defendant's stock pen in the early part of the day. It appears that by 10:30 o'clock plaintiff had delivered all of the eighty-two hogs in good order and condition in defendant's stock pen at Reading to await the arrival of the car in which they were to be loaded in the cool of the evening for the freight due there about 9:00 p. m. After having placed the hogs in the stock pen, plaintiff returned to his home and telephoned defendant's freight agent at Louisiana, Missouri that the hogs were delivered in the pen and to bill them out. In response to this message, defendant's agent answered, "All right," and took a memorandum over the telephone of the number of the hogs, their character, the consignee and their destination at East St. Louis. About the middle of the afternoon, thirty-four of the hogs were found dead from overheat, and another died soon after.

The petition charges that defendant so carelessly and negligently maintained its stock pen at Reading as to prevent ventilation and the circulation of air therein and that it is because of this negligence the hogs came to their death. It is averred that defendant negligently piled railroad ties along and adjacent

to one side of the stock pen and permitted tall weeds and grass to grow up and stand thick adjacent to all the remaining sides thereof so as to prevent the free circulation of air within the pen. The evidence tends to prove that plaintiff drove his hogs carefully from home in the early part of the day and permitted them to cool off thoroughly before placing them in the pen about ten o'clock in the forenoon. If the evidence is to be accepted as true, as it was by the jury, the hogs were certainly sound and in good order when plaintiff delivered them to defendant in the pen. The evidence tends to prove, too, that a condition of excessive heat prevailed in the stock pen because the circulation of air was largely impeded therein as a result of the thick growth of weeds and the pile of ties complained of in the petition. There is evidence, too, that these weeds and ties were negligently permitted to grow and stand around and adjacent to the stock pen.

It is argued the judgment should be reversed because it is said the delivery of the hogs to defendant was not complete at the time they died. Touching this argument, it may be said that defendant should be required to respond for the consequences of its negligence in the circumstances of the case at any event; for, though the hogs were not delivered to defendant in the sense that it had acknowledged receipt therefor by issuing a bill of lading or had undertaken the task of loading them on the car, which more properly rested with plaintiff, the evidence is conclusive to the effect that its agent in charge invited plaintiff to place the hogs in the pen to await the arrival of the car which had been ordered the day before. No one can doubt that it is the duty of defendant, common carrier of live stock, to maintain yards or stock pens for the accommodation of those desiring to ship animals over its road. The duty to maintain such stock pens includes, too, an obligation which the law annexes that they shall be maintained rea-

sonably safe for the purpose intended.    Therefore,
if a shipper is invited by defendant to corral his hogs
or cattle in such pen to await the arrival of a car, as a
corollary of such invitation, the law casts the obligation
on it to respond for such damages as may result to the
shipper through negligence in the construction or main-
tenance of the stock pen.  [See Lackland v. C. & A. R.
Co., 101 Mo. App. 420, 74 S. W. 505; Cooks v. K. C. &
Ft. S. R. Co., 57 Mo. App. 471; Kincaid v. K. C., etc.
R. Co., 62 Mo. App. 365.]

But aside from all of this, there is an abundance in
the testimony of both plaintiff and defendant's agent
to constitute substantial evidence to the effect that the
shipment of hogs had been actually received by defend-
ant about 11:15 o'clock in the forenoon.   Touching this
matter, plaintiff testified that he notified defendant's
agent through the telephone that he had delivered the
hogs in defendant's stock pen to await the arrival of
the car; that defendant's agent took the number and
character of hogs, the name of the consignee and the
place of destination and informed plaintiff he would
bill them out accordingly.   Defendant's agent testified
substantially the same as to this matter, but says he
did not actually make out the billing until 5:00 o'clock
in the afternoon.   It is true plaintiff admits that he
was to come later in the day, in accordance with the
custom, and load the hogs into the car from the stock
pen, but, be this as it may, enough appears to sup-
port the finding of the jury that an actual delivery had
been made to defendant before the hogs died, for,
though a delivery implies a change of possession from
the shipper to the carrier and that the shipper has re-
linquished control of the property, for the time being,
to the exclusive possession of the carrier, such may be
found from the evidence here, notwithstanding the
custom which required plaintiff to perform the physi-
cal act of loading the hogs on the car after it arrived.
We say this on the evidence of plaintiff, that he noti-

fied defendant's agent he had delivered the hogs to it in the stock pen, and the agent said "All right," and that he took the number and character of the hogs together with the name of the consignee, for the purpose of issuing the billing. From such direct testimony and other facts and circumstances in evidence, it was certainly competent for the jury to find that possession of the hogs had been delivered to defendant, and this question was especially presented to the triers of the facts by instructions on both sides. [See Lackland v. C. & A. R. Co., 101 Mo. App. 420, 74 S. W. 505; Mason v. Mo. Pac. R. Co., 25 Mo. App. 473; 6 Am. & Eng. Ency. Law (2 Ed.), p. 461.]

Touching the matter of plaintiff's contributory negligence, if any, most assuredly it may not be declared as a matter of law on the proof here so as to entirely preclude his right of recovery. It may have been careless for him to corral eighty-two fat hogs in a dry pen on a heated June day without looking more closely to the matter of ventilation, but, unless the situation was so obviously dangerous that no reasonably prudent man would place that number of like hogs in the pen for the time being, plaintiff's negligence is not to be declared as a matter of law. If the probable dangers because of the poor ventilation were matters about which fair minds might differ, the question was one for the jury and the court very properly so treated it in the instruction given. [See Lackland v. C. & R. Co., 101 Mo. App. 420, 74 S. W. 505.]

But error intervened in the instructions for plaintiff by which the case was submitted to the jury. The petition charges several specific acts of negligence against defendant and plaintiff's instructions submitted to the jury in most general terms the question of defendant's liability, without regard whatever to the charges laid in the petition. The petition charges defendant's stock pen was negligently and carelessly

constructed and maintained in this: ''That said pen was too small, and the defendant had negligently and carelessly allowed weeds and grass to grow to a great heighth, and in rank profusion, around and adjacent to said pen; and had allowed railroad ties to be stacked around and adjacent to said pen, so that the grass, weeds and ties cut off air and breeze from reaching and blowing upon the hogs therein; and, that the defendant in violation of its duty as a common carrier negligently failed to provide any sheds, shed shelter, or other protection in said pen, and negligently failed to provide any, or supply said pen with, water for the use of live stock placed in said pen for shipment in hot weather.'' By plaintiff's second instruction the court authorized a verdict for him if the jury found the death of the hogs ''was caused by the negligence and carelessness, if any, of the defendant in failing to provide a reasonably safe place to receive and care for said hogs after being received by it and awaiting shipment over its line.'' From this it appears the jury were authorized to find for plaintiff on the ground that defendant failed ''to provide a reasonably safe place to receive and care for said hogs'' without reference to the specific negligent acts set forth in the petition touching this matter. Obviously the instruction permitted the jury to draw upon its imagination with respect to the grounds of liability without heed to the several charges defendant was called upon in the petition to meet. In this there is reversible error, for by the universal course of decision it is improper to submit the question of liability in such general terms. In other words, where the petition charges specific acts of negligence, as here, the instructions authorizing a recovery should submit to the jury only the charges of negligence laid in the petition, or at least such of them as the evidence tends to prove, to the end that the verdict may respond to the true issue made. The following authorities are in point: Davidson v. St. Louis

Transit Co., 211 Mo. 320, 109 S. W. 583; Beave v. St. Louis Transit Co., 212 Mo. 331, 111 S. W. 52; Lowenstein v. Mo. Pac. R. Co., 110 Mo. App. 686, 85 S. W. 625; Politowitz v. Citizens' Tel. Co., 115 Mo. App. 57, 90 S. W. 1031; Miller v. United Rys. Co., 155 Mo. App. 528, 134 S. W. 1045.

'For error in the instruction above pointed out, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.*, and *Caulfield, J.*, concur.