## MARIE FELDEWERTH, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, March 3, 1914.**

1. **RAILROADS: Injury at Crossing: Sufficiency of Evidence.** In an action for injuries sustained at a railroad crossing by being struck by a backing train which had, for some time prior to the accident, been standing stationary near the crossing, evidence *held* sufficient to show that the train was moved without any warning being given, so as to make the question of defendant's negligence one for the jury.

2. ————: ————: **Contributory Negligence.** In an action for injuries sustained at a railroad crossing by being struck by a backing train which had, for some time prior to the accident, been standing stationary near the crossing, uncoupled from the engine, *held* that plaintiff's testimony, that she looked and listened, before going upon the track, to see whether the engine was approaching the train, could not be disregarded on the theory that it was contradicted by the physical facts, so as to convict her of contributory negligence as a matter of law, as the engine which backed against the train was a quarter of a mile from the place of the accident, at the time plaintiff looked, and her view of it might have been obscured by intervening objects.

3. ————: ————: ————. In an action for injuries sustained at a railroad crossing by being struck by a backing train which had, for some time prior to the accident, been standing stationary near the crossing, uncoupled from the engine, *held* that the question of whether plaintiff was guilty of contributory negligence in failing to look and listen, after she passed obstructions which cut off her view of the engine which backed against the train was, under the evidence, for the jury.

4. ————: **Backing Train: Negligence.** The movement of a train backwards upon a street crossing does not, in and of itself, imply negligence, but the question of whether or not such movement is a negligent one depends upon whether or not warning thereof was given to persons using the highway.

5. ————: **Injury at Crossing: Instructions: Failure to Submit Specific Negligence.** In an action for injuries sustained at a railroad crossing by being struck by a backing train, where the petition averred that defendant was negligent in backing its train without warning and without having a brakeman

on the rear car, an instruction, charging that a recovery could be had if the jury found that the defendant negligently backed its train, was erroneous, for the reason that it did not confine the jury to the negligence pleaded.

Appeal from Montgomery Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED.

*James L. Minnis, N. S. Brown* and *Smith & Johnson* for appellant.

(1) Appellant's demurrer to the evidence, offered at the close of the plaintiff's case, and again at the close of all the evidence, should have been given, and the court erred in submitting the case to the jury, because: (a) The evidence shows that defendant's agents and employees then operating the said freight train were not guilty of negligence as a matter of law. (b) The undisputed evidence shows that the plaintiff, herself, was guilty of negligence in failing to keep a lookout to the west, when she saw and knew that the train was upon the track, and in assuring her brother, who was then driving the horse, that it was safe for him to go upon the railroad track. Lien v. Railroad, 79 Mo. App. 475; Kelsay v. Railroad, 129 Mo. 362; Green v. Railroad, 192 Mo. 131; Sanguinette v. Railroad, 196 Mo. 466; Laun v. Railroad, 216 Mo. 563; Waggoner v. Railroad, 152 Mo. App. 173; Dyrcz v. Railroad, 238 Mo. 33; Pope v. Railroad, 242 Mo. 232; Burge v. Railroad, 244 Mo. 76; Farris v. Railroad, 167 Mo. App. 392; Burnett v. Railroad, 154 S. W. 1135. (2) The court erred in the giving of plaintiff's instruction No. 1, because the said instruction purports, upon its face, to cover the entire case, and fails to confine the jury to a consideration only of the specific acts of negligence charged in the petition. The said instruction is nothing more than a roving and unrestrained commis-

·sion to the jury to find for the plaintiff and against the defendant. Davidson v. Transit Co., 211 Mo. 675; Miller v. Railways Co., 155 Mo. App. 528; Reading v. Railroad, 165 Mo. App. 123.

W. R. Dalton and E. Rosenberger & Son for re-, spondent.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of personal injuries received through defendant's negligence. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff received her injuries while crossing de-, fendant's railroad track in the town of Wentzville, through defendant's local freight train suddenly backing against the buggy in which she was riding. It appears the local freight train had been standing for a couple of hours on the north or "passing track" at Wentzville. The train was headed to the westward, and the caboose stood about four feet west of the west end of the street crossing. Plaintiff was in a buggy in company with her brother, who was driving the horse southward across defendant's track, on the public crossing, when suddenly the freight train standing there was precipitated backwards with great force against the buggy, overturning it and inflicting severe and permanent injuries upon her.

The specifications of negligence relied upon in the petition go to the effect that defendant suddenly, without warning of any kind and without keeping a man or lookout at the rear of the train to give signals concerning its movements, backed the train upon plaintiff while on the public crossing, so as to occasion her injuries. It appears the train in question had been standing on the crossing for probably two hours, waiting for other trains from the west to pass there. The train was a long one and extended from within four feet—that is, where the caboose stood—of the public

crossing at which plaintiff was injured, to the westward, across another street as well. The train had been cut in two, or separated, at the crossing of the street farthest west, so as to permit passing through over that thoroughfare, and the locomotive had gone to a water tank several miles away for a supply of water. At about 6:45 in the evening, the locomotive returned and picked up some two or three cars on the south or "house track," then ran to the westward on the main line and backed down to the eastward on the north switch, or "passing track," with a view of coupling those cars to the standing cars of the train next west of the crossing which had theretofore been cut. It was designed, too, to make what is mentioned in the evidence as a "double coupling," that is to say, to couple by the same impact the cars attached to the locomotive to those standing next west of the crossing, which had been cut, and shunt those cars over the crossing so as to couple them on to the main part of the train standing east of the crossing. The couplings were automatic and operated as a result of the impact and the force involved in making them.

The evidence is abundant to the effect that this "double coupling" was made with great force. Indeed, the engineer and brakeman testify that the locomotive was running about four miles per hour at the time. Upon the occurrence of the impact and because of the force employed thereabout, the entire train was shunted backwards—that is, to the east—so as to drive the caboose against the buggy in which plaintiff was riding, passing south on the highway crossing. The buggy was thus overturned, plaintiff thrown upon the railroad track, with her back across the rail, and "scooted" along the same as the caboose proceeded eastward.

It is first argued the court should have directed a verdict for defendant because there is no evidence tending to prove the negligent acts relied upon for a

recovery, but we are not so persuaded. It seems the case was carelessly tried on the part of plaintiff and without a well-directed effort to develop the facts duly relevant to the charges of negligence laid in the petition. But be this as it may, there is enough revealed to render the question of defendant's negligence one for the jury. By scrutinizing plaintiff's evidence, it appears she said that, though she looked and listened attentively, she neither saw an engine nor heard any noises whatever therefrom. From this, of course, the jury may infer that no blasts of the whistle were sounded nor bell rung, as is usual, to the end of giving warning that a train is about to be moved. Furthermore, she says that she observed no one stationed about the crossing where the caboose ran upon the buggy. Plaintiff's brother, who was driving the buggy, said, ''I looked up the track, and so did sister, and I seen no engine, heard no whistle or no bell; there was no one around nowhere, except maybe a rig way up the street.'' Of course, this evidence tends to prove that no warning whatever of the movement of the train was communicated and in and of itself constitutes substantial evidence to that effect. Then, too, upon reading the entire record, there seems to be enough in the evidence introduced on the part of defendant to show that no one was stationed about the crossing with a view of giving warning that the train was to be moved. However, the evidence is meager and, as said before, poorly developed on the true issues in the case. But it is substantial in character and sufficient to reveal a negligent breach of duty on the part of defendant with respect to plaintiff who was using the crossing at the highway immediately adjacent to the caboose. [See Compton v. Mo. Pac. R. Co., 165 Mo. App. 287, 147 S. W. 842; s. c. 147 Mo. App. 414, 126 S. W. 821.]

Plaintiff and her brother, in the buggy, approached the railroad tracks from the north, driving in the public thoroughfare, and came in view of the

train, probably fifty or seventy-five feet before they reached the point at which she was injured, for it appears a public street of the town runs east and west along the north side of the railroad tracks. The date was July 13 and the hour about 6:45 or 7:00 in the evening, so the fullness of daylight prevailed. The train, it is said, was a long one, consisting of about twenty-five cars, and the view to the westward in the neighborhood of the engine was wholly unobstructed, save by a small band stand and some two or three trees along the line of the street. It is said that the band stand stood 950 feet west of the crossing at which plaintiff was injured. This band stand was octagonal and about fourteen by fourteen feet in dimensions and from twelve to fourteen feet high. A portion of this structure stood in the public street and a portion on the railroad right of way. The evidence is, that there was a space of eight or probably ten feet between the band stand and the north side of the railroad track on which the train was standing. Plaintiff and her brother testify that they both looked westward and listened for a train or the movement of one before driving upon the crossing. The horse attached to the buggy which plaintiff's brother was driving is said to have been a family horse and it was moving forward in an ordinary walk. The buggy was an ordinary one with top in place erect but no side curtains, that is, the top was not inclosed save overhead.

It is argued the court should have directed a verdict for defendant because of the contributory negligence of plaintiff in that neither she nor her brother looked to the westward to discover the presence of the engine, which subsequently, while making the coupling, occasioned her injury. But this argument is to be reckoned with in connection with the evidence of both plaintiff and her brother to the effect that they did look and listen at the time. Indeed, it is said they looked and listened both while driving across the street

from the northward, approaching the track, and, plain-
tiff says, until the collision occurred. In view of this
positive statement on her part and in her behalf, we
are not permitted to declare as a matter of law that
the fact exists to the contrary. And especially is this
true, in view of the fact that all of the evidence goes
to show the locomotive was engaged in taking cars from
the south, or "house track," to the westward and run-
ning them back with a view of coupling them on to the
train which stood on the north or "passing track."
It may be that at the time the view was made the loco-
motive was obscured a quarter of a mile down to the
westward while engaged in doing this switching.

Another argument proceeds on the theory that
plaintiff's view was obstructed by the band stand,
which, it is said, stood 950 feet to the westward from
the point of injury, and that as plaintiff could not see
the engine because of that, she was required to take
another view after passing such obstruction. It is
urged plaintiff should be declared negligent as a mat-
ter of law because she omitted to look again after she
had passed the line of vision obstructed by the band
stand 950 feet to the westward. Of course, this argu-
ment assumes and predicates upon the fact that the
band stand obstructed the view, when such is by no
means conceded in the proof. However that may be,
it is to be considered for what it is worth on the facts
of the case. It is true if plaintiff and her brother
looked, as they say they did, and did not see the loco-
motive, that it may be the view was obstructed by
the band stand which stood some eight or ten feet north
of the track and 950 feet to the westward. The evi-
dence is, the track was straight and the view open,
except for the obstruction mentioned, for a long dis-
tance and, no doubt, quite beyond the point at which
the locomotive was then engaged. It may be conceded,
too, for the purposes of the case, though not decided,
in view of the fact the band stand was 950 feet dis-

tant, that if plaintiff's view was obstructed by it when she looked, the law devolved the duty upon her to look again after passing the line of such obstruction before entering upon the railroad tracks, which are always regarded as a signal of ever present danger to persons *sui juris*. The argument advanced with respect to this matter assumes that plaintiff did not look after passing the line at which her vision was obstructed because of the band stand. This assumption is not supported by the evidence, for the plaintiff did not so testify. As before said, plaintiff approached the railroad from the north but came into full view of it when in the street running east and west along the north side of the tracks. She says in her testimony that when driving in the street running east and west, she looked to the westward and listened for a train but all was "dead." She saw the train standing on the track before her with its caboose adjacent to the crossing towards which the horse and buggy were moving. When she first looked, plaintiff says, "I was across the street, but couldn't say just the distance." Plaintiff also says, in answer to the following question: "Q. Were you about how far across the street to the track when you looked? A. Well, I looked quite a long time as we were driving; I was looking right along; I don't know just when I started to look, but I was across the street, but I stooped over like this (witness indicates), and looked." At another place in her testimony plaintiff says she does not think she was twenty feet away from the track at one time when she looked. She then states that, "I looked after that. Yes, sir." Then the following question and answer appear: "Q. Well, had you got as near to the track as from this table to you? A. I think so; about that." When all of this evidence is considered together, it is obvious that plaintiff intended the jury to understand that she looked continuously until going upon the track. At one place, as before stated, she says, "I was looking

right along." And she looked at one time when she was as near to the track as the table which was near her in the courtroom. Of course, it does not appear how close the table was to plaintiff at the time she was testifying, but it is to be inferred it was but a few feet away. She does not think she was more than twenty feet from the track at one time when she looked and, at any rate, it is clear enough that she looked subsequent thereto, if her evidence is true. The band stand was eight or ten feet north of the track and 950 feet to the west of the point where plaintiff looked. It is quite clear from this that plaintiff looked after the line of vision obstructed by the band stand was passed. The court did not err in denying defendant's request for a peremptory instruction to find for it.

The first instruction given at the instance of plaintiff is as follows:

"The court instructs the jury that if you find and believe from the evidence that on or about July 13, 1911, the defendant, through its agents, servants and employees in charge of its westbound local freight train No. 71 placed its freight train upon its sidetrack in the town of Wentzville, Missouri, and placed the caboose, which was on the rear end of said freight train at and near a public street crossing and permitted said caboose to remain in that position for a long period of time; and if you further find and believe from the evidence that on said date plaintiff was riding in a buggy which was drawn by a horse, and which was driven by her adult brother, Anthony Feldewerth, and that while said Anthony Feldewerth was driving said horse with the buggy in which plaintiff was riding, and was in the act of crossing defendant's railroad tracks at the public street crossing aforesaid, and in close proximity to defendant's caboose, and while plaintiff was at said time in the exercise of ordinary care on her part, that the defendant's agents, servants and employees in charge of said train negligently started

said train and caboose backwards, and that as a direct result thereof, the buggy in which plaintiff was riding was struck by said caboose, and plaintiff was thrown from the buggy in which she was riding and was injured, then you will find a verdict for the plaintiff.''

It will be observed that this instruction is general in character in that it authorizes a recovery for plaintiff if the jury should find ''the defendant's agents, servants and employees of said train negligently started said train and caboose backwards, and as a result thereof, the buggy in which plaintiff was riding was struck by said caboose, and plaintiff was thrown from the buggy in which she was riding and was injured.'' Although the instruction covers the whole case and authorizes a verdict for plaintiff on the finding of facts therein hypothesized, it in nowise requires the jury to find defendant guilty of the specific acts of negligence relied upon in the petition for a recovery. While the petition contains several averments of negligence, all were abandoned save the charges that ''defendant's agents, servants and employees in charge of said train negligently, carelessly and recklessly and without giving any warning or signal and without having any employee at the rear of said train for the purpose of giving warning to plaintiff that said train was about to be moved and without any notice of any kind to plaintiff, unexpectedly caused said train and caboose to be suddenly started backwards,'' so as to collide with the buggy and injure plaintiff. There can be no doubt that defendant had the right to back its train upon the crossing and that no one could complain with respect to that matter, unless such movement of the train was done in a careless and negligent manner. In other words, the mere movement of the train backwards upon the crossing does not in and of itself imply negligence, and defendant's dereliction of duty with respect of that matter depends upon the performance of it without giving any warning or affording

means of warning to persons using the highway, for the precepts of ordinary care require this to be done in the interest of the safety of persons probably passing over the crossing. The instruction above copied is wholly deficient, in that it fails to require the jury to find defendant breached its obligation with respect of this matter.

Though the averments of negligence in the petition were general in character and not specific, as it is, the instruction would be erroneous, for even in such cases, where the trial proceeds on a general averment of negligence, the court is required to submit in the instructions the specific acts of negligence developed in the evidence and may not authorize a recovery in general terms upon any negligent act the jury may evolve or conjecture. [See Allen v. St. Louis Transit Co., 183 Mo. 411, 81 S. W. 1142; Sommers v. St. Louis Transit Co., 108 Mo. App. 319, 83 S. W. 268; Miller v. United Rys. Co., 155 Mo. App. 528, 546, 134 S. W. 1045.]

But be this as it may, the petition in the instant case relied upon and asserts specific acts of negligence against defendant as above pointed out, and the same rule applies in such cases. Especially is this true when the instruction purports to cover the whole case and authorizes a verdict for plaintiff, for then, instead of fulfilling the office of a guide, such general instruction tends to mislead the jury, in that it seems to authorize them to evolve a theory of liability on account of some negligent act not involved in the case. Therefore, no one can doubt that the court should require the jury to find the negligent breach of duty in accordance with the specific facts of negligence pleaded in the petition and developed in the evidence, to the end of confining the issue to the charge laid. The Supreme Court condemns the practice of submitting the matter of defendant's negligence in such general terms, where specific acts of negligence are relied upon in the petition,

as reversible error, as will appear from the following cases in point: Beave v. St. Louis Transit Co., 212 Mo. 331, 352, 353, 111 S. W. 52; Price v. St. Louis, K. C. etc. R. Co., 72 Mo. 414, 416; Abbott v. Kansas City, St. J. etc. R. Co., 83 Mo. 271, 278. See, also, in the Courts of Appeals Miller v. United R. Co., 155 Mo. App. 528, 546, 134 S. W. 1045; Reading v. Chicago, B. & Q. R. Co., 165 Mo. App. 123, 145 S. W. 1166; Politowitz v. Citizens' Tel. Co., 115 Mo. App. 57, 90 S. W. 1031.

. The instruction is erroneous because it permitted the jury to affix liability against defendant upon any theory of negligence which it might evolve without regard to the specific acts of negligence asserted and relied upon in the petition and with respect to which defendant was called to defend. It required the jury to find nothing more than that defendant's agents and servants negligently started said train without regard to the acts relied upon. By another instruction, given at the instance of plaintiff, the term "negligence," as used in the instructions, is defined to mean that the party guilty thereof has done something which a reasonably prudent person, under the circumstances, would not have done or failed to do something which a reasonably prudent person, under the circumstances, would have done. No doubt the jury looked to this definition in performing their office, and it is clear enough that under it defendant might be convicted on any dereliction which they might find to be contrary to the conduct which usually attends an ordinarily prudent person in like circumstances. Like general authorization to find for a plaintiff where specific acts of negligence are charged has been unhesitatingly condemned as reversible error in that it is misdirection in Beave v. St. Louis Transit Co. and the other authorities supra, and the rule of decision to that effect is firmly established. If such an instruction may be

181 App. 41

Stottler v. Railroad.

aided in any case by others given under the rule that they should all be read together, it is certain no such aid appears in the record here. Indeed, the court re-fused all of the instructions on the part of defendant and none were given presenting the issues from its standpoint.

Because of the error above pointed out, the judg-ment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.