JAMES LEE READING, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals.** Argued and Submitted January 7, 1915. Opinion Filed February 2, 1915.

1. COMMON CARRIERS: Maintenance of Live Stock Pens: Injury to Stock Awaiting Shipment: Sufficiency of Evidence. In an action for the death of hogs from overheating while in the stock pens of defendant railway company, awaiting shipment, evidence *held* sufficient to warrant a recovery by plaintiff; following s. c. 165 Mo. App. 123.

2. ————: ————: ————: Evidence. In an action for the death of hogs from overheating while in the stock pens of defendant railway company, awaiting shipment, *held* that evidence offered by defendant, tending to show that plaintiff's negligence directly contributed to cause the damage, that the hogs were, at the time of their death, in the exclusive possession and under the exclusive control of plaintiff, and that the station where the pens were located was a "wayside deposit," a "blind station," was properly excluded, either as being irrelevant or incompetent.

3. ————: ————: ————: ————. In an action for the death of hogs from overheating while in the stock pens of defendant railway company, awaiting shipment to another State, where defendant denied that the hogs had been shipped, or that they had even been delivered to it, tariffs and classifications of defendant, on file with the Interstate Commerce Commission, which were offered in evidence by defendant, were irrelevant, and hence it was proper to exclude them.

4. ————: ————: ————: Questions for Jury. In an action for the death of hogs from overheating while in the stock pens of defendant railway company, awaiting shipment, *held* that the question of whether there was a delivery of the hogs to, and an acceptance of them by, defendant, the question of whether plaintiff used due care in placing the hogs in the pens, and the question of whether the pens were in proper condition, were for the jury, under the evidence; following s. c. 165 Mo. App. 123.

5. ————: ————: ————: Interest. An action for the death of hogs from overheating while in the stock pens of defendant railway company, awaiting shipment, being an action *ex*

*delicto*, interest cannot be recovered on the claim, prior to the rendition of judgment.

6. **INTEREST: Allowance: Actions Ex Delicto.** Interest is not' allowable on a claim arising *ex delicto*, prior to the rendition of judgment.

7. **APPELLATE PRACTICE: Excessive Recovery: Cure by Remittitur.** In an action for damages, where the petition prayed for an award of $497 and the uncontradicted evidence showed that such was the amount of damage sustained, *held* that it was apparent that the amount erroneously allowed for interest in the verdict for the lump sum of $577.15 was $80.15, and hence the error was curable by remittitur.

Appeal from Louisiana Court of Common Pleas.—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED (*conditionally*).

*O. M. Spencer, J. W. Matson, Palmer Trimble* and *M. G. Roberts* for appellant.

(1)  The instruction in the nature of a demurrer to the evidence should have been given for the following reasons:  (a)  At all ''flag'' stations or ''wayside deposits'' made for the purpose of saving the trouble of hauling to a regular depot the live stock are held at the risk of the owner until they are placed upon the cars.  This is for the reason that the shipper knows that there are no agents or servants of the defendant company there to water or feed the cattle or otherwise care for them, and hence the law places the duty upon the plaintiff. 1 Hutchison on Carriers (3 Ed.), sec. 122, p. 120; also Vol. 2, sec. 929, p. 1046; Anderson v. Railroad, 38 So. 661; Tate v. Railroad, 29 So. 393; Wilson v. Railroad, 9 S. E. (Ga.) 1076; Wells v. Wilmington, 51 N. C., 72 Am. Dec. 556; Railroad v. Lilly, 8 So. 644.  (b)  Because it appears from plaintiff's testimony that the hogs were still, at the time they were injured, under his dominion and in his possession and that they had not been delivered to and

accepted by the defendant. The obligation of the common carrier does not commence until delivery, and this delivery must be complete so as to put upon him the exclusive duty of looking after the cattle. The law will not divide the duty and it must rest entirely upon one or the other. The mere placing of the cattle in the yards at a "blind" station is not delivery. 1 Hutchison on Carriers (3 Ed.), sec. 105, p. 102; 4 Elliott on Railroads (2 Ed.), sec. 1404, p. 23; Authorities under (a). (c) Because the condition of the stock pen was fully known by the plaintiff and he knew that the same condition had existed for five years. Those conditions were open and obvious. The same rule in determining negligence applies to the plaintiff as well as to the defendant. The plaintiff admits that he is an expert hog man. There can be no different standards in determining negligence, and since the condition of the stock pens were as fully known to the plaintiff as they were to the defendant, he was guilty of contributory negligence in placing his hogs there, as a matter of law. 5 Thompson on Negligence, sec. 6586, p. 991; Zachrzewski v. Railroad, 145 N. W. (Minn.) 801, 802. (2) This is an action *ex delicto* for simple negligence, and the court erred in instructing the jury to award interest on the amount claimed from date of demand and erred in refusing to grant a new trial for the same reason. In this kind of a case interest is not permitted. Eagan v. Railroad, 6 Mo. App. 594; Brink v. Railroad, 17 Mo. App. 177; De-Steiger v. Railroad, 73 Mo. 33; Meyer v. Railroad, 64 Mo. 542; State ex rel. Planet P. & F. Co. v. Harrington, 44 Mo. App. 301; Gerst v. St. Louis, 185 Mo. 211. (a) Even if interest was allowable, the verdict is so indefinite and vague that it does not measure up to the standard required by law in that the jury did not assess the damages and interest separably so that the court could determine whether a proper amount was allowed. (b) In cases where interest has been im-

properly allowed the courts have permitted respondent to enter a remittitur upon paying the costs of the appeal when it can be determined from the verdict how much interest the jury allowed. But in this case a reversal should be made for the reason that it cannot be determined from the record how much the jury allowed as interest. State ex rel. v. Hope, 121 Mo. 34; Hawkins v. Press Brick Co., 63 Mo. App. 68; Kimes v. Railroad, 85 Mo. 614. (3) The court erred in excluding the tariffs and classifications of the defendant governing this shipment on file with the Interstate Commerce Commission for the reason that the plaintiff predicates a recovery on damage to these hogs after delivery, and, since this is an interstate shipment, these tariffs, which are binding both upon the plaintiff and defendant and cannot be deviated from, show that the liability of the defendant is limited to ten dollars for each hog. Boston & Maine Railroad, 233 U. S. 110; Adams Express Co. v. Croninger, 226 U. S. 491, 44 L. R. A. (N. S.) 257; Wells, Fargo & Co. v. Neiman-Marcus Co., 227 U. S. 469; Railroad v. Carl, 227 U. S. 639; Railroad v. Harriman, 227 U. S. 657; Railroad v. O'Connor, 232 U. S. 508; Railroad v. Spring River Stone Co., 169 Mo. App. 109; Myers v. Railroad, 134 Mo. App. 379.

*Pearson & Pearson,* for respondent.

(1) The law is well established in this State, that it is the duty of the railroad company holding itself out as a common carrier of live stock, and has invited and obtained a shipper's business, to establish and maintain a safe receptacle for the receipt and preservation of live stock awaiting shipment over its road; and this duty cannot be efficiently discharged without the aid of pens or yards in which the stock, offered for shipment, can be received and handled with safety awaiting shipment. Reading v. Railroad, 165 Mo. App.

123; Lackland v. Railroad, 101 Mo. App. 420; Mason v. Railroad, 25 Mo. App. 473. (2) As to whether or not the pen in the case at bar, was a reasonably safe receptacle for the receipt and preservation of hogs awaiting shipment on appellant's railroad, was a question for the jury to determine under proper instructions. Reading v. Railroad, supra; Lackland v. Railroad, supra; Prewitt v. Railroad, 62 Mo. 527, 543. (3) The main question that appellant endeavors to press on this court is a question of fact, that there was no delivery to or acceptance of, these hogs by appellant. This was a question of fact to be submitted to the jury under proper instructions. Reading v. Railroad, supra; Lackland v. Railroad, supra, 428; Holland v. Railroad, 139 Mo. App. 70; Mason v. Railroad, 25 Mo. App. 473; Prewitt v. Railroad, 62 Mo. 527.

REYNOLDS, P. J.—This is the second appeal in this case, the judgment formerly rendered having been set aside and the cause remanded by our court for error in an instruction. [See Reading v. Chicago, Burlington & Quincy Railroad Co., 165 Mo. App. 123, 145 S. W. 1166.] On the case reaching the circuit court after our judgment of reversal, the petition being unchanged, defendant filed an amended answer which averred that the hogs complained of by plaintiff were not delivered to defendant and never had been in its possession until loaded upon defendant's cars; that if any damage occurred to the hogs prior to that time it so occurred while they were in the possession and under the control and care of plaintiff. It is further averred that if plaintiff placed his hogs in the stock yards at Reading siding, he was using defendant's pens solely for his own convenience in lieu of retaining his hogs on his own premises until the evening of the day they were loaded on the cars, and that in so using defendant's stock pens plaintiff assumed the risk of putting and holding his hogs in the pen during all that

part of the day prior to the loading of the hogs, and that defendant is in nowise liable for any damage or injury to plaintiff's hogs during the time that he so kept them in defendant's pens prior to the loading of the hogs by plaintiff into defendant's cars. Finally, it is set up as a defense that any injury or damage to plaintiff's hogs prior to the time they were loaded by him upon defendant's car, resulted wholly and solely from the negligence of plaintiff and his agents and employees in driving the hogs a long distance during the heat of the day and putting them in uncovered pens, the condition of which was well known to plaintiff, and in so leaving them there without any proper care or attention, and in failing to haul the hogs to the railroad pens as any ordinarily prudent shipper would have done under similar circumstances, hence defendant says it is in nowise liable to plaintiff for any damage or injury to his hogs sustained prior to the time plaintiff loaded them into defendant's car.

This was replied to by general denial.

Comparing these averments in the amended answer with the statement of the issues as set out when the cause was before us on the former appeal, it will be seen that the issues at this second trial were practically as at the former trial. So, too, the facts as developed at this second trial were substantially as at the first trial. They are so fully set out in the report of the case on the former appeal, that we need not repeat them. Most of the legal propositions involved are substantially as before and are so conclusively disposed of in that opinion, that we do not think it necessary to enter into a further discussion of them.

The error for which the former judgment was reversed, an error in an instruction, was not repeated at this second trial. No error is now assigned on the instructions given except as to one in which the court told the jury that if they found for plaintiff they might award him whatever sum they found from the evidence

the hogs that died were reasonably worth, after deducting therefrom the amount, if any, which plaintiff realized from the sale of the dead hogs, not to exceed $497, the amount demanded, and that to this sum the jury might add interest thereon at the rate of six per cent per annum from the date of demand, if any demand had been proven.

The other errors assigned here are to the action of the court in overruling instructions in the nature of demurrers to the evidence offered at the close of plaintiff's case and again at the conclusion of the introduction of all the evidence in the case; to error in excluding competent, material and relevant testimony offered by defendant tending to show that plaintiff's negligence contributed directly to cause the damage to his hogs; in excluding competent and relevant testimony offered by defendant tending to show that the hogs in controversy, at the time of the death of some of them, were in the exclusive control and possession of plaintiff and had not been delivered to and accepted by defendant; in excluding competent, material and relevant testimony showing that Reading switch was a "wayside deposit," a "blind station," and that there were no agents of defendant thereat; in excluding the tariffs of defendant on file with the Interstate Commerce Commission and governing the shipment mentioned in plaintiff's petition and evidence.

The demurrers to the evidence were properly overruled; there was substantial evidence introduced by plaintiff warranting the submission of the cause to the jury. We need not repeat it, referring to the statement of it as set out in the opinion handed down on the former appeal.

We have read the testimony excluded and find no error of the court in its action in this exclusion. It was either irrelevant or incompetent and properly excluded for those reasons. Touching the assignment, that the court erred in excluding tariffs and classifica-

tions of defendant on file with the Interstate Commerce Commission, we are unable to see how this was relevant in any view of this case, inasmuch as defendant denied that there had been any shipment of these particular hogs or that they had been delivered to it.

We are unable to understand what is meant by a "blind station," or a "wayside deposit," as applicable to this case. It is true that there was no agent at this switch where the cattle and hog pens were located, but it is equally true that this Reading switch was a known and used point for the reception and loading of hogs and cattle, and that it was recognized and used by defendant and by shippers for that purpose.

The facts in this case, as developed at this second trial, are not only substantially as set out by Judge NORTONI when the case was here on the former appeal but are almost identical with the facts in Lackland v. C. & A. Ry. Co., 101 Mo. 420, 74 S. W. 505. In both cases the question of whether a delivery had been made and acceptance of the hogs at the pen at this switch was held to be a question of fact for the determination of the jury. So it may be said as to the question of due care by plaintiff, of the condition of the pens and as to the other questions involved.

Touching the matter of interest, we think that under the decisions of our Supreme Court, interest is not allowable, this being an action *ex delicto*. [Gerst v. City of St. Louis, 185 Mo. 191, l. c. 211, 84 S. W. 34.]

But it is said by appellant that even if interest is allowable the verdict is so vague that it does not measure up to the standard required by law in that the jury did not separate the principal from the interest. The damages claimed in the petition in this case were $497 and interest; the verdict and judgment are for $577.15. That allows $80.15 for interest, which is less than the interest would be from the date of demand. The value of the dead hogs as averred in the petition, was proved without any attempt at contradiction.

If plaintiff will, within ten days from February 16, 1915, file in this court a remittitur of $80.15, the judgment will be affirmed for $497 and interest from its rendition; otherwise, it will be reversed and the case remanded. *Nortoni* and *Allen, JJ.,* concur.