WILLIAM R. HUMPHREYS, Respondent, v. ST. LOUIS & HANNIBAL RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, July 2, 1915.

1. **COMMON CARRIERS: Maintenance of Stock Pens: Duty of Carrier.** A carrier must exercise ordinary care to maintain its stock pens in a reasonably safe condition to prevent injury to, or the escape of, animals placed therein by a shipper for shipment.

2. ———: ———: ———: **Notice to Carrier.** A carrier is liable for the value of live stock which escape from a stock pen maintained by it, although no actual notice of the fact that the stock had been placed in the pen, awaiting shipment, was given it, where a custom obtains between the carrier and shippers, operating as an invitation on the part of the carrier to deliver stock in the pen without giving it express notice thereof.

3. ———: ———: ———: ———: **Sufficiency of Evidence.** In an action against a carrier for the value of hogs which escaped from a stock pen maintained by the carrier, where they

Humphreys v. St. Louis & Hannibal Railroad.

had been placed by the shipper, awaiting a car to load them on, evidence *held* sufficient to warrant a finding that the carrier knew the hogs were in the pen, awaiting shipment; *held, further,* that whether the shipper was guilty of contributory negligence, because he knew the pen to be more or less defective, was a question for the jury.

4. ————: ————: Duty of Carrier: When Duty Commences. Where live stock is delivered in a stock pen maintained by a carrier, for shipment, the obligation of the carrier with respect to the safety of the stock attaches immediately upon the delivery, for such is accessory to the carriage; and this is true although the shipper is to call later to load the stock on a car.

5. ————: ————: Escape of Live Stock: Instructions: Failure to Submit Specific Negligence. In an action against a carrier for damages for the loss of hogs which escaped through a stock pen fence maintained by the carrier, while awaiting shipment, where the petition alleged that the stock pen had become defective through the carelessness of the carrier, in that posts, planks, and nails used in the construction of the inclosure were suffered by defendant to become so rotted, rusted, worn, wasted and weakened as to render them insufficient to protect against the escape of the hogs, an instruction authorizing a recovery on a mere finding that the carrier failed to keep its pens in a safe and secure condition and by reason thereof hogs of the shipper escaped and were lost, was erroneous, because it did not limit a recovery to the specific acts of negligence alleged in the petition.

6. NEGLIGENCE: Instructions: Necessity of Submitting Specific Negligence. In a negligence action, an instruction authorizing a recovery by plaintiff without requiring a finding on the specific acts of negligence counted on is erroneous.

7. INSTRUCTIONS: Omissions: Cure by Other Instructions. Where an instruction given for the plaintiff, which covers the whole case and authorizes a verdict for him, omits to require facts to be found that are essential to a recovery, the error cannot be cured by another instruction given for him, which is sufficient with respect to the matter omitted.

8. COMMON CARRIERS: Maintenance of Stock Pens: Duty of Carrier: Instructions. In an action against a carrier for damages for the loss of live stock which escaped from a stock pen maintained by the carrier, while awaiting shipment, an instruction, that it was the duty of the carrier to keep its stock pens in a reasonably safe condition, was erroneous, since the law only requires carriers to exercise ordinary care to that end.

9. ————: Loss of Live Stock: Damages: Interest. Where live stock is lost by escaping from a stock pen maintained by a

carrier, while awaiting shipment, the shipper is entitled to interest on the value of the stock, from the date of institution of a suit to recover damages; overruling Reading v. Railroad, 188 Mo. App. 41.

10. ———: Carriage of Live Stock: Liability. A carrier is an insurer of live stock which it undertakes to carry, save against the act of God or the public enemy, carelessness of the shipper, or vicious propensities of the stock.

11. PLEADINGS: Prayer of Petition: Interest. A recovery may not be had for an amount in excess of the prayer of the petition, and, in order to recover interest, the prayer should ask for it.

Appeal from Lincoln Circuit Court.—*Hon. B. H. Dyer,* Judge.

REVERSED AND REMANDED.

*R. L. Sutton, J. D. Hostetter* and *G. C. Huston* for appellant.

(1) There was no evidence tending to show that defendant or its agent had any notice or knowledge of the delivery of plaintiff's hogs into its stock pens, and no liability of defendant attached with reference to them prior to the escape of the hogs alleged to have been lost. Merriam v. Railroad, 20 Conn. 354; Williams v. Peytavin, 4 Mart. (La.) 304; Grosvenor v. Railroad, 39 N. Y. 34; Blachard v. Isaacs, 3 Barb. (N. Y.) 388; Ball v. New Jersey Steamboat Co., 1 Daly (N. Y.) 491; O'Bannon v. Southern Express Co., 51 Ala. 481; Wells v. Railroad, 51 N. C. 47; Lackland v. Railroad, 101 Mo. App. 420; Holland v. Railroad, 139 Mo. App. 716; Travy v. Railroad, 80 Mo. App. 392; Holland v. Railroad, 163 Mo. App. 252; Reading v. Railroad, 165 Mo. App. 129; Reading v. Railroad, 173 S. W. 452; Packard v. Getnan, 6 Cow. 757; Milne v. Railroad, 155 Mo. App. 470. (2) Plaintiff's instruction numbered 3 was erroneous in that it enlarged the issues beyond the specific negligence alleged in the petition, and permitted the jury to draw upon its im-

agination with respect to the grounds of liability. Reading v. Railroad, 165 Mo. App. 123; Black v. Railroad, 217 Mo. 672; Bank v. Murdock, 62 Mo. 73; Mansur v. Botts, 80 Mo. 658; Zachra v. American Mfg. Co., 159 Mo. App. 96; Gibler v. Railroad, 148 Mo. App. 475, 487; Lowenstein v. Railroad, 110 Mo. App. 686; McManamee v. Railroad, 135 Mo. 447; Bamberge v. Supreme Tribe Ben Hur, 159 Mo. App. 101. (3) The plaintiff, in his efforts to prove his own case, clearly showed himself guilty of such contributory negligence as to bar a recovery, and it was the plain duty of the court to so declare as a matter of law. Lackland v. Railroad, 101 Mo. App. 427; Railroad v. Law, 68 Ark. 218; Chapin v. Railroad, 79 Ia. 582; Susong v. Railroad, 115 Ga. 361; Hutchinson v. Railroad, 37 Minn. 524; Lee v. Railroad, 72 N. C. 236; Betts v. Farmers L. & T. Co., 21 Wis. 80; Newby v. Railroad, 19 Mo. App. 391; Allen v. St. Louis Transit Co., 183 Mo. 424; Ramp v. Railroad, 133 Mo. App. 703; Border v. Sedalia, 161 Mo. App. 638. (4) Moreover, if plaintiff could not be declared guilty of contibutory negligence as a matter of law, at least there was ample evidence to go to the jury upon this issue, introduced, solely by plaintiff in his efforts to make out his case, and the court erred in refusing to submit the issue to the jury as requested by defendant in its instruction numbered 4, and in ignoring the issue in instructions numbers 1 and 3 given on behalf of the plaintiff. Lackland v. Railroad, 101 Mo. App. 427; Railroad v. Law, 68 Ark. 218; Chapin v. Railroad, 79 Ia. 582; Susong v. Railroad, 115 Ga. 361; Hutchinson v. Railroad, 37 Minn. 524; Lee v. Railroad, 72 N. C. 236; Betts v. Farmers L. & T. Co., 21 Wis. 80; Newby v. Railroad, 19 Mo. App. 391; Allen v. St. Louis Transit Co., 183 Mo. 424; Ramp v. Railroad, 133 Mo. App. 703; Border v. Sedalia, 161 Mo. App. 638. (5) The allowance of interest on the damages claimed is reversible error. Reading v. Railroad, 173 S. W. 452. (6) There was mani-

fest error in excluding the defendant's record of way
bills, kept in the regular course of business at its Troy
station. This evidence was both competent and rele-
vant. Wright v. Railroad, 118 Mo. App. 392; Green-
lief on Evidence (16 Ed.), sec. 563, page 698; 1 Elliott
on Evidence, sec. 208; Leschen v. Brazelle, 164 Mo.
App. 415; 10 Encyclopedia of Evidence, page 719;
Railroad v. Zapp, 209 Ill. 339; Lyons v. Corder, 253
Mo. 549. (7) The petition does not state facts suffi-
cient to constitute a cause of action against defendant.
See authorities cited under point 1.

*John L. Burns* for respondent.

(1) Defendant had invited plaintiff to deliver his
hogs into its pens on that day and it was the duty of
defendant to make the pens reasonably safe, in default
of which, it was liable for the damages sustained. Ma-
son v. Railroad, 25 Mo. App. 480; Tracey v. Railroad,
80 Mo. App. 392; Cooke v. Railroad, 57 Mo. App. 478;
Kincaid v. Railroad, 62 Mo. App. 365; McCulough v.
Railroad, 34 Mo. App. 23; Paddock v. Railroad, 60 Mo.
App. 339; Reading v. Railroad, 165 Mo. App. 128;
Lackland v. Railroad, 101 Mo. App. 420; Holland v.
Railroad, 163 Mo. App. 251. (2) There was no error
in giving plaintiff's instruction, numbered 3. It must
be read in connection with the other instructions, and
being so read, the jury could not possibly be misled
thereby. The only way in which the pens could be un-
safe or insecure so as to permit the escape of the hogs,
would be because of defects in the materials, planks or
posts out of which the pens were constructed, as speci-
fied in the petition, and in instruction numbered 1 given
for plaintiff and in the "evidence given in the case"
as this instruction required. There is no warrant to
the jury to "rove" in finding defendant's negligence.
The case is entirely different from the Reading case
and others cited by appellant. There was no "evi-

dence" in the case from which any defects could be found, except those specified in the petition. Where instructions taken as a whole, present the facts properly to the jury, they should be given, although one of them standing alone would be erroneous. Heinzle v. Railroad, 213 Mo. 102; Leise v. Meyer, 143 Mo. 547; Flaherty v. St. Louis Transit Co., 207 Mo. 318; Chambers v. Chester, 172 Mo. 461; Shores v. St. Joseph, 134 Mo. App. 9; Evers v. Wiggins Ferry Co., 127 Mo. App. 236; Senn v. Railroad, 135 Mo. 512. (3) There was no error in the refusal of defendant's instruction numbered 4 for various good and sufficient reasons. (a) Contributory negligence is an affirmative defense and must be pleaded before plaintiff is required to take any notice of it in his instructions. Borders v. Railroad, 168 Mo. App. 172; Peperknorn v. Railroad, 154 S. W. 836; Benjamin v. Railroad, 245 Mo. 598; Donovan v. Railroad, 89 Mo. 147; Stone v. Hunt, 94 Mo. 475; Mosman v. Bender, 80 Mo. 579; Collett v. Huhlman, 243 Mo. 585. (b) The instruction, numbered 4, imposes upon plaintiff the burden of guarding his hogs after delivery of the same to defendant for carriage, whereas it was the duty of defendant to either provide proper pens to retain the hogs or else to otherwise restrain them, and not the duty of plaintiff to do so. Reading v. Railroad, 165 Mo. App. 128. (c) The instruction is further faulty in that it imposes upon plaintiff the burden of passing upon the sufficiency of the pen at his peril. Sloan v. Railroad, 58 Mo. 221; Potts v. Railroad, 17 Mo. App. 394; Mason v. Railroad, 25 Mo. App. 480; Tracy v. Railroad, 80 Mo. App. 389, 392. (d) The instruction further imposes an excessive burden on plaintiff for the reason that plaintiff is denied the right to recovery, if he knew that hogs "could" escape, that is, that it was possible for them to escape, whereas he is only chargeable if the defects were so glaring and obvious that a reasonably prudent man would have refused to put hogs in the

pen. Reading v. Railroad, 165 Mo. App. 129. (5) It was proper to allow interest from the day suit was filed. This in effect is a suit for the loss of the hogs *in toto,* not for damages. It is not true that in all actions *ex delicto* interest is denied. From the beginning of our jurisprudence in this State, interest has been allowed for goods lost by carriers. Gray v. Packet Co., 64 Mo. 47; Dunn v. Railroad, 68 Mo. 268; Goodman v. Railroad, 71 Mo. App. 460; Lachner Bros. v. Express Co., 72 Mo. App. 13. (6) There was no error in excluding defendant's record of way bills offered in evidence. This evidence was both incompetent and irrelevant. They are not carbon copies, and do not stand on the same footing as carbon copies. Neither are they books of account within the meaning of the statutes, R. S. 1909, sec. 6355, or within the shopbook rule at common law. Traber v. Hicks, 131 Mo. 189; Haas v. Hicks, 131 Kan. 787; 1 Greenleaf on Evidence, secs. 117-119; Jones on Evidence (2 Ed.), secs. 209 & 225; Seibert v. Ragsdale, 103 Ky. 206; Smith v. Brown, 151 Mass. 338; Westinghouse Co. v. Tilden, 56 Neb. 129. Neither do the press book copies purport to be complete copies of the waybill, so as to be admissible as secondary evidence of the waybill or bill of lading. An inspection of the proffered evidence will show that no property is described and that most of the important features of the bills are absent. They are, in other words, obviously not full copies of any document whatever and are not admissible as copies under the secondary evidence rule. 17 Cyc., pages 517, 518; McKelvey on Evidence, secs. 164-166; Kyser v. Railroad, 56 Iowa, 207. (7) The petition states a good cause of action. See authorities cited under point 1 of this brief. Especially after a verdict is rendered, in the absence of any demurrer. Bowie v. Kansas City, 51 Mo. 454, 461; Munchow v. Munchow, 96 Mo. App. 553; Scamell v. Transit Co., 103 Mo. App. 504; Winn v.

Railroad, 245 Mo. 406; Morrison v. Railroad, 162. Mo. App. 662.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of the alleged negligence of defendant. Plaintiff recovered and defendant prosecutes the appeal.

Defendant is a common carrier and as such maintains a station and stock pens at Troy, Missouri. Plaintiff delivered eighty-seven fat hogs to defendant in its stock pens, with a view of loading them on a car for shipment, and five of the hogs escaped through a defective fence. The hogs were lost and the suit proceeds for their value.

It appears that the fence of the stock pen was defective and had been so for several months. Some of the posts were rotted and the boards were insecurely nailed thereto. Because of this defective condition, it is said the five hogs escaped from the pen and were lost to plaintiff.

There can be no doubt that the law casts an obligation on a common carrier of live stock to exercise ordinary care to the end of maintaining its pens for the reception of stock in a reasonably safe condition, so as to prevent the injury or escape of the animals placed therein by a patron for shipment. [See Reading v. Chicago, B. & Q. R. Co., 165 Mo. App. 123, 145 S. W. 1166; Lackland v. Chicago & A. R. Co., 101 Mo. App. 420, 74 S. W. 505; Mason v. Mo. Pac. R. Co., 25 Mo. App. 473; Holland v. Chicago R. I. & P. R. Co., 163 Mo. App. 251, 146 S. W. 1181; 1 Hutchinson on Carriers (3 Ed.) (M. & D.), sections 114, 115.]

But it is argued it should appear the carrier knew the hogs were delivered in the pen or otherwise the obligation in respect of them may not be invoked, and, no doubt, this is generally true. However, express notice to the carrier is not always essential. If a conventional arrangement otherwise appears, or if a practice

or custom obtains between the carrier and its patron, so as to operate as an invitation on the part of the carrier to the shipper to deliver the stock in the pen for shipment, without express notice concerning the fact, this will suffice. [See 1 Hutchinson on Carriers (3 Ed.) (M. & D.), section 115.]

It is true there is no direct evidence that plaintiff notified defendant's agent the hogs were in the pen in the early part of the day, though the evidence is, the agent issued a bill of lading covering the transportation of eighty-two of the number to St. Louis, that evening. It appears that plaintiff was engaged in the business of buying and shipping stock and as such was a regular patron of defendant. He delivered hogs and cattle frequently to defendant in the identical pen at Troy, for shipment, and defendant accepted such shipments as tendered. On the day previous to the shipment involved here, plaintiff ordered a car from defendant's agent at Troy to transport hogs to St. Louis, and this car was provided by defendant for that purpose on the day the hogs were placed in the pen.

The evidence is, that the stock pen is near defendant's depot, where the agent maintained his office, and on its property. Several hours were consumed in receiving the hogs, weighing them and placing them in the pen. Having placed the hogs in the pen, plaintiff returned to his home to await the arrival of the car, later in the day, into which they were to be loaded, and, during the time, five of them escaped. Plaintiff returned in the evening, loaded the remainder in the car—that is, eighty-two head of hogs,—and received a bill of lading from the agent. Though the evidence is meager, it was competent for the jury to find from these facts that defendant knew the hogs were placed in the pen for shipment. Certainly such may be inferred from what appears. Especially is this true in view of the fact that plaintiff frequently shipped hogs from that place and followed the usual course in order-

ing the car from the agent the day before. Obviously, defendant invited him to make the delivery, accordingly, and should be regarded, after verdict on these facts, as if it knew that he did so. This being true, defendant's obligation with respect to the safety of the hogs attached immediately on the delivery in the pen, for such was accessory to the carriage. [See Mason v. Mo. Pac. R. Co., 25 Mo. App. 473.] This is true, too, though plaintiff was to call later in the day and load the hogs in the car, for, in the interim, after delivery in the pen, under such circumstances, the obligation to protect against their escape obtained. [See Holland v. Chicago, R. I. & P. R. Co., 163 Mo. App. 251, 146 S. W. 1181.] The matter of plaintiff's contributory negligence, because he knew the pen to be more or less defective, was likewise a question for the jury.

The petition avers that the stock pen had become defective through the carelessness of defendant, in that the posts and planks and nails used in the construction of the inclosure were suffered by defendant to become so rotted, rusted, worn, wasted and weakened as to render them insufficient to protect against the escape of the hogs.

Plaintiff's first instruction submitted the negligence relied upon and required a finding of the facts alleged concerning the same. But the third instruction given at his request is general in character and purports to cover the whole case, in that it authorizes a verdict for plaintiff on the finding of the matters therein recited. His third instruction is as follows:

"The court instructs the jury, that if it has been proven to your satisfaction by the evidence given in the case that the defendant railroad was a common carrier for the purpose of carrying freight, especially hogs, from its stock pens near its railroad station in Troy, Missouri, to intermediate points on its railroad on the date alleged in its petition, to-wit, the 23rd day

of March, 1911, and that it did receive and transport this kind of freight for hire at and about that time, then it was the duty of said defendant to keep its stock yards or stock pens at Troy, Missouri, in a reasonably safe and secure condition for the purposes intended; and now if you believe and find from the evidence, that on said date, to-wit, the 23rd day of March, 1911, that the plaintiff herein delivered to the defendant for shipment to St. Louis, Missouri, eighty-seven head of hogs and that the defendant received said hogs for shipment and put them or had them put or suffered them to be put in its stock pens for shipment over its road and while they were in said pens of defendant, the defendant failed to keep its pens in which they were in a safe and secure condition and by reason of its failure so to do, five of plaintiff's hogs escaped from said pens and were lost to plaintiff, then the law is that the defendant must be responsible to the plaintiff for the value of said hogs so lost as shown by the evidence, provided your verdict, if you find for the plaintiff, shall not exceed $62.16 with interest thereon at six per cent from the date of the filing of this suit to-wit, the 2nd day of September, 1911.''

This instruction authorized a finding for plaintiff, without regard to the specific averments of negligence contained in the petition, on a mere finding that ''the defendant failed to keep its pens in which they were in a safe and secure condition and by reason of its failure  so to do five of plaintiff's hogs escaped from said pens and were lost to plaintiff.'' This is insufficient under the established rule of decision which obtains in the Supreme Court, for that such a general instruction is said to permit the jurors to evolve any theory of negligence they may imagine and cast liability against defendant on grounds other than those set forth in the petition. [See Davidson v. St. Louis Transit Co., 211 Mo. 320, 109 S. W. 583; Beave v. St. Louis Transit Co., 212 Mo. 331, 111 S. W. 52.] We

condemned a similar instruction in a case of like character recently in Reading v. Chicago, B. & Q. R. Co., 165 Mo. App. 123, 145 S. W. 1166.

Although plaintiff's first instruction is well enough, in that it submits the specific negligence relied upon in the petition, the third instruction above copied may not be treated as aided thereby. On this question the most recent ruling in the Supreme Court goes to the effect that where plaintiff's instruction authorizing a verdict for him covers the whole case but omits a ground of negligence essential to his recovery, such may not be cured by another one of plaintiff's instructions, which is amply sufficient with respect to the matter omitted. [See Hall v. Coal & Coke Co., 260 Mo. 351, 168 S. W. 927.] Furthermore, the instruction says "it was the duty of defendant to keep its stockyards in a reasonably safe condition" whereas the law requires it to exercise ordinary care to that end only.

The instruction above copied authorizes, too, the recovery of interest at six per cent on the value of the hogs lost from the date of filing the suit. It is argued this was error as declared in Reading v. Chicago, B. &. Q. R. Co., 188 Mo. App. 41, 173 S. W. 451, but we are not so persuaded. On reconsideration, we conclude that interest may be recovered in cases where the suit proceeds, as here, on the common-law liability of the common carrier for the loss of property in its possession for transportation, if other elements of liability are present. Indeed, such seems to be the general rule on the subject as stated by Mr. Hutchinson in his work on Carriers. [See Vol. 3 (3 Ed.) (M. & D.), section 1360.] In such cases the author thus states the rule on the measure of damages:

"It is well settled that the measure of the damages for the loss of the goods by the carrier, when he is liable for such loss, is generally the value of the goods at the destination to which he undertook to carry

191M.A.46

them, with interest on such value for the time when the
goods should have been delivered, deducting, however,
the unpaid cost of transportation, but adding such in-
cidental damages as naturally and proximately flow
from the loss. This, at least in the great majority of
cases, will be the extent of the loss of the shipper, and
of the compensation for its breach, which it may be
reasonably supposed was in the contemplation of the
parties at the time of the making of the contract."

In this State, it is established by the prior course
of decision that interest is recoverable in cases of this
character, as a matter of right. Generally speaking,
such interest is to be recovered from the time the prop-
erty should be delivered at the point of destination.
However, where the suit is instituted subsequent to
that time, it is competent to give interest on the value
of the property lost, from the date of the institution of
the suit, as was decided by the Supreme Court in Dunn
v. Hannibal & St. J. R. Co., 68 Mo. 268. [See, also,
Gray v. Mo. R. Packet Co., 64 Mo. 47; Lachner Bros. v.
Adams Express Co., 72 Mo. App. 13, 21; Goodman v.
Missouri, K. & T. R. Co., 71 Mo. App. 460, 464; Smith
v. Whitman, 13 Mo. 352.]

The broad statement that interest may not be re-
covered in actions *ex delicto* is not warranted by the
authorities. Indeed, the statute (section 5430, R. S.
1909) authorizes the jury, "if they shall think fit," to
give damages in the nature of interest, over and above
the value of the goods, in suits for conversion. Under
this statute, it is said that interest is recoverable in a
suit *ex delicto* as for conversion, if the jury sees fit to
give it, but not as a matter of right. [See State ex rel.
v. Hope, 121 Mo. 34, 25 S. W. 893; see, also, Lack v.
Brecht, 166 Mo. 242, 65 S. W. 976.] There are other
cases where it is said to be improper to allow interest
on damages recovered on the ground of negligence
alone as where property is destroyed through the neg-
ligent setting out of a fire by a locomotive. [See De-

Steiger v. Hannibal & St. J. R. Co., 73 Mo. 33; Atkinson v. Atl. & Pac. R. Co., 63 Mo. 367.] So, too, the rule is declared that interest may not be recovered on the amount of damages suffered through the negligent killing of stock on a railroad. [See Meyer v. Atl. & Pac. R. Co., 64 Mo. 542.] Also, in Gerst v. St. Louis, 185 Mo. 191, 211, 84 S. W. 34, involving a suit for damages to real estate, it is said that interest is not recoverable on damages in actions *ex delicto,* where no pecuniary benefit could accrue by reason of the injury.

But, after all, none of these cases purports to disapprove the rule above stated, that interest may be recovered on the amount of damages suffered in suits of the character here in judgment. The cases last above pointed out treat with the question concerning unliquidated damages in actions of tort, generally speaking. But the rule with respect to common carriers of freight we apprehend stands on an entirely different footing, so as to segregate the damages which accrue from a loss by such carriers into a separate class as appears throughout the law. Indeed, a common carrier is an insurer of inanimate freight, save against the act of God or the public enemy, and is an insurer, too, with respect to live stock in his custody for transportation, save against the act of God, the public enemy, the carelessness of the shipper, or the vicious propensities of the animals themselves. This being true, the carrier is required to deliver the goods intact, except as above stated, and in event of his failure, he is required to respond for such value and interest thereon from the time the delivery should be made at the point of destination. This is true, too, Mr. Hutchinson says, where the goods have not been lost or destroyed, but are delivered only in a depreciated condition, attributable to causes for which the carrier is responsible. Even in such cases, the measure of damages is the difference, after deducting the cost of transportation, between their value as actually delivered and

as they should have been delivered, including interest and other matters pointed out by the author. [See 3 Hutchinson on Carriers (3 Ed.), section 1362.]

But be this as it may, the rule of decision in this State is well established to the effect that interest is recoverable in suits of this character against the common carrier on the value of the property lost, as above stated. [See Dunn v. Hannibal & St. J. R. Co., 68 Mo. 268; Gray v. Mo. R. Packet Co., 64 Mo. 47; Lachner Bros. v. Adams Express Co., 72 Mo. App. 13, 21; Goodman v. Missouri, K. & T. R. Co., 71 Mo. App. 460, 464.] The authority of these cases is in nowise impaired by more recent decisions, so far as we have been able to discover. What was said, therefore, on this question in Reading v. Chicago, B. & Q. R. Co., 188 Mo. App. 41, 173 S. W. 451, should be, and is, disapproved.

But a recovery may not be had for an amount in excess of the prayer. The petition says nothing as to interest, whereas it should pray for it. [Shockley v. Fischer, 21 Mo. App. 551; Van Riper et al. v. Morton, et al., 61 Mo. App. 440, 444; Farrell v. Fire Ins. Co., 66 Mo. App. 153.]

The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.